Scottlynn J Hubbard IV, SBN 212970
**DISABLED ADVOCACY GROUP, APLC**
12 Williamsburg Lane
Chico, CA 95926
Telephone: (530) 895-3252
Facsimile: (530) 894-8244

United States District Court

Eastern District of California

| | | |
|---|---|---|
| William Barker,<br><br>Plaintiff,<br><br>v.<br><br>California Department of Corrections and Rehabilitation, Warden Brian Duffy, Facility Captain K. Allen, Sergeant W. Perehoduk, and Correctional Officer K. Anger,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 2:14-cv-02403-CKD**<br><br>**Plaintiff's First Amended Complaint** |

## COMPLAINT

1. Plaintiff William Barker ("Barker") complains that the California Department of Corrections and Rehabilitation, Warden Brian Duffy ("Duffy"), Facilities Captain K. Allen ("Allen"), Sergeant W. Perehoduk ("Perehoduk"), and Correctional Officer K. Anger ("Anger") discriminated against him on the basis of his disability at the California Medical Facility ("CMF") and, thus, violated state and federal disabled access laws and Barker's right to be free of cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

## PARTIES

2. Barker is a California resident with physical disabilities. He is in the custody, care, and control of the California Department of Corrections and Rehabilitations ("CDCR") and incarcerated at CMF. CMF physicians have diagnosed Barker with having a history of chronic infectious disease, a right femur fracture with open reduction and internal fixation, and severe degenerative arthritis in his right hip. Barker suffers from pain in his back, shoulder, and neck. He requires a walker or cane while inside his cell, and requires a wheelchair when outside of his cell. He is unable to bend, squat, or kneel, lift more than five pounds, climb stairs, and is subject to falls. He additionally suffers from claustrophobia.

3. Barker was designated DPO under the *Armstrong* Consent Decree, as an inmate who does not require a wheelchair full time, but is medically prescribed a wheelchair for use outside his cell. The DPO designation entitles him to a lower bunk and wheelchair-accessible paths of travel.

4. The State of California is a public entity.

5. CDCR is a department or agency (or both) of the State of California.

6. Duffy is an employee of the State of California, was the warden of CMF at the time Barker's injury occurred, and was charged with the care, custody and safety of the inmates at CMF, including Barker.

7. Allen is, and was at the time of the incident at issue, the facilities captain of CMF and an employee of the State of California, charged with the care, custody and safety of the inmates at CMF, including Barker.

8. Perehoduk is, and was at the time of the incident at issue, a correctional sergeant at CMF and an employee of the State of California, charged with the care, custody and safety of the inmates at CMF, including Barker.

9. Anger is, and was at the time of the incident at issue, a correctional officer at CMF and an employee of the State of California, charged with the care, custody and safety of the inmates at CMF, including Barker.

## JURISDICTION

10. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for claims brought under Title II of the Americans with Disabilities Act of 1990 ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Rehab Act"), 42 U.S.C. § 1983, and state law claims that arise under federal law because Barker's right to relief under those claims necessarily depend on resolving a substantial question of federal law.

11. Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

12. Barker's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## VENUE

13. All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## FACTS

14. The Disability Placement Program ("DPP") is the CDCR's set of plans, policies, and procedures to assure nondiscrimination against inmates/parolees with disabilities. The DPP applies to all CDCR institutions and facilities, all programs that CDCR provides or operates, and to all inmates who have disabilities that affect a major life activity, regardless of whether the disability impacts placement. Under this program, inmates with permanent mobility impairments, or other disabilities severe enough to require special housing and programming, are assigned to special placement in a "designated DPP facility."

15. CMF is a designated DPP facility.

16. Designated DPP facilities are required to offer disabled inmates a range of programming equivalent to that available to nondisabled inmates.

17. A functional capacity chrono renewal dated May 21, 2013, reflects that Barker suffers from severe degenerative arthritis in his right hip, has difficulty standing and walking, and uses a wheelchair for ambulation (attached hereto as Exhibit 1).

18. This chrono renewal form was copied to Barker's central file at CMF, and an additional copy was provided to Facilities Captain K. Allen.

19. On or about December 18, 2013, Barker was transferred from his dorm to the Administrative Segregation Unit ("ASU"), following an altercation with another inmate that was investigated by Perehoduk and Anger.

20. On December 26, 2013, Barker appeared in his wheelchair before a classification hearing board to determine whether he would remain in the ASU.

21. Warden B. Duffy met Barker at this hearing, as Duffy served as the chairman of the board. Duffy further encountered Barker at various classification

hearings over the following four months. (Department of Corrections form CDC 128-G attached hereto as exhibit 2).

22. On December 21, 2013, Barker used the shower in the M-3 unit of the ASU.

23. After showering, Barker attempted to transfer from the plastic shower wheelchair to his personal wheelchair.

24. Barker used his left leg for the transfer, given his history of degenerative arthritis in his right hip.

25. Barker lost his balance and reached out for a grab bar to break his fall, but found none installed on the rear shower wall.

26. Without the grab bar to hold on to for support, Barker fell, injuring his left shoulder, ribs, hip, and the side of his head.

27. Barker was taken to San Joaquin General Hospital's Emergency Room ("San Joaquin ER") for treatment following the fall. Barker received a CT scan of the Lumbosacral spine, which was normal.

28. The following day, December 22, 2013, Barker was seen in the B-1 unit Emergency Room of CMF for an inability to move his left leg following the fall.

29. Barker was taken back to San Joaquin ER in order to receive an MRI, which Barker declined due to his history of claustrophobia.

30. After returning to CMF from San Joaquin ER on December 23, 2013, Barker was transferred to the G-2 housing unit, a Correctional Treatment Center with nursing staff available 24 hours per day.

31. CDCR's deliberate indifference to Barker's obvious need for an ADA-compliant shower facility in the ASU contributed to and caused Barker's injuries, and violated his rights under the ADA, the Unruh Civil Rights Act, and related California laws.

32. On March 18, 2014, Barker exhausted all administrative remedies available to him (attached hereto as Exhibit 3).

33. On April 10, 2014, the California Victim Compensation and Government Claims Board denied his claim (attached hereto as Exhibit 4).

**COUNT ONE**

**Title II of the Americans with Disabilities Act of 1990**

34. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

35. One form of prohibited discrimination is the public entity's, or the public entity's agent's, failure to provide an ADA-compliant shower facility for prisoners with disabilities.

36. Barker is a qualified individual with a disability in the United States as defined by the ADA. 42 U.S.C. § 12102.

37. CDCR is a public entity as defined by the ADA.

38. Duffy is an officer acting in his official capacity for a public entity (*i.e.*, the State of California).

39. Allen is an officer acting in her official capacity for a public entity (*i.e.*, the State of California).

40. Perehoduk is an officer acting in his official capacity for a public entity (*i.e.*, the State of California).

41. Anger is an officer acting in his official capacity for a public entity (*i.e.*, the State of California).

42. Duffy, in his official capacity, knowingly discriminated against Barker based on the aforementioned acts and omissions at CMF, which include

transferring Barker to a unit in the ASU that lacks an ADA-compliant shower facility once it became apparent that Barker had a qualified disability.

43. Allen, in her official capacity, knowingly discriminated against Barker based on the aforementioned acts and omissions at CMF, which include transferring Barker to a unit in the ASU that lacks an ADA-compliant shower facility once it became apparent that Barker had a qualified disability.

44. Perehoduk, in his official capacity, knowingly discriminated against Barker based on the aforementioned acts and omissions at CMF, which include transferring Barker to a unit in the ASU that lacks an ADA-compliant shower facility once it became apparent that Barker had a qualified disability.

45. Anger, in his official capacity, knowingly discriminated against Barker based on the aforementioned acts and omissions at CMF, which include transferring Barker to a unit in the ASU that lacks an ADA-compliant shower facility once it became apparent that Barker had a qualified disability.

46. Because these acts and omissions evince deliberate indifference, Barker seeks actual damages, costs, and legal expense under the ADA. 42 U.S.C. §§ 12133, 12205.

**COUNT TWO**

**Section 504 of the Rehabilitation Act of 1973**

47. Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794 (a).

48. Section 504 of the Rehabilitation Act imposes the same obligations and liability on entities as Title II of the ADA. *See Wong v. Regents of the Univ. of Calif.*, 192 F.3d 807, 811 n.2 (9th Cir. 1999).

49. By virtue of his employer CDCR, Duffy's activities at CMF receive federal funding.

50. By virtue of her employer CDCR, Allen's activities at CMF receive federal funding.

51. By virtue of his employer CDCR, Perehoduk's activities at CMF receive federal funding.

52. By virtue of his employer CDCR, Anger's activities at CMF receive federal funding.

53. Here, Duffy, in his official capacity, knowingly discriminated against Barker based on the aforementioned acts and omissions at CMF, which include transferring Barker to a unit in the ASU that lacks an ADA-compliant shower facility once it became apparent that Barker had a qualified disability.

54. Here, Allen, in her official capacity, knowingly discriminated against Barker based on the aforementioned acts and omissions at CMF, which include transferring Barker to a unit in the ASU that lacks an ADA-compliant shower facility once it became apparent that Barker had a qualified disability.

55. Here, Perehoduk, in his official capacity, knowingly discriminated against Barker based on the aforementioned acts and omissions at CMF, which include transferring Barker to a unit in the ASU that lacks an ADA-compliant shower facility once it became apparent that Barker had a qualified disability.

56. Here, Anger, in his official capacity, knowingly discriminated against Barker based on the aforementioned acts and omissions at CMF, which include transferring Barker to a unit in the ASU that lacks an ADA-compliant shower facility once it became apparent that Barker had a qualified disability.

57. These acts and omissions resulted in Barker suffering discrimination under the program receiving federal financial assistance.

58. Solely by reason of his disability, Barker has been subjected to discrimination and physical injury at CMF.

59. Barker seeks actual damages and, reasonable attorney fees and costs under the Rehabilitation Act. 29 U.S.C. § 794(a)(2).

**COUNT THREE**

**California's Disabled Person Act (CDPA)**

60. Section 54(a) of the California Civil Code states, in part, that "individuals with disabilities have the same right as the general public to full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places."

61. Section 54.1(a)(1) of the California Civil Code also states that "Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited."

62. Both sections specifically incorporate by reference an individual's rights under the ADA. Calif. Civil Code §§ 54(c), 54.1(d).

63. Here, Duffy, in his official capacity, knowingly discriminated against Barker based on the aforementioned acts and omissions at CMF, which include transferring Barker to a unit in the ASU that lacks an ADA-compliant shower facility once it became apparent that Barker had a qualified disability.

64. Here, Allen, in her official capacity, knowingly discriminated against Barker based on the aforementioned acts and omissions at CMF, which include transferring Barker to a unit in the ASU that lacks an ADA-compliant shower facility once it became apparent that Barker had a qualified disability.

65. Here, Perehoduk, in his official capacity, knowingly discriminated against Barker based on the aforementioned acts and omissions at CMF, which

include transferring Barker to a unit in the ASU that lacks an ADA-compliant shower facility once it became apparent that Barker had a qualified disability.

66. Here, Anger, in his official capacity, knowingly discriminated against Barker based on the aforementioned acts and omissions at CMF, which include transferring Barker to a unit in the ASU that lacks an ADA-compliant shower facility once it became apparent that Barker had a qualified disability.

67. These acts and omissions violated the CDPA by denying him full and equal access to CMF.

68. Barker's rights under the CDPA were infringed upon or violated by that denial.

69. Duffy also violated the CDPA by infringing upon or violating Barker's rights under the ADA.

70. Allen also violated the CDPA by infringing upon or violating Barker's rights under the ADA.

71. Perehoduk also violated the CDPA by infringing upon or violating Barker's rights under the ADA.

72. Anger also violated the CDPA by infringing upon or violating Barker's rights under the ADA.

73. For each offense, Barker seeks actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than $1,000. Calif. Civil Code § 54.3(a).

74. Barker also seeks general and special damages, declaratory relief, reasonable attorney fees and any other remedy available under the CDPA. Calif. Civil Code § 54.3.

## COUNT FOUR

## Unruh Civil Rights Act

75. Section 51 of the California Civil Code states, in part, that "all persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

76. Section 51(f) of the California Civil Code specifically incorporates by reference an individual's rights under the ADA.

77. Section 51.5 of the California Civil Code states that "no business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person."

78. Here, Duffy, in his official capacity, knowingly discriminated against Barker based on the aforementioned acts and omissions at CMF, which include transferring Barker to a unit in the ASU that lacks an ADA-compliant shower facility once it became apparent that Barker had a qualified disability.

79. Here, Allen, in her official capacity, knowingly discriminated against Barker based on the aforementioned acts and omissions at CMF, which include transferring Barker to a unit in the ASU that lacks an ADA-compliant shower facility once it became apparent that Barker had a qualified disability.

80. Here, Perehoduk, in his official capacity, knowingly discriminated against Barker based on the aforementioned acts and omissions at CMF, which include transferring Barker to a unit in the ASU that lacks an ADA-compliant shower facility once it became apparent that Barker had a qualified disability.

81. Here, Anger, in his official capacity, knowingly discriminated against Barker based on the aforementioned acts and omissions at CMF, which include transferring Barker to a unit in the ASU that lacks an ADA-compliant shower facility once it became apparent that Barker had a qualified disability.

82. Duffy discriminated against the physically disabled inmates, including infringing upon or violating Barker's rights under the ADA, and violated the Unruh Act by denying them full and equal access to CMF.

83. Allen discriminated against the physically disabled inmates, including infringing upon or violating Barker's rights under the ADA, and violated the Unruh Act by denying them full and equal access to CMF.

84. Perehoduk discriminated against the physically disabled inmates, including infringing upon or violating Barker's rights under the ADA, and violated the Unruh Act by denying them full and equal access to CMF.

85. Anger discriminated against the physically disabled inmates, including infringing upon or violating Barker's rights under the ADA, and violated the Unruh Act by denying them full and equal access to CMF.

86. Barker's rights under the Unruh Act were infringed upon or violated or both by that denial.

87. For each offense, Barker seeks actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than four thousand dollars ($4,000).

88. Barker also seeks general damages, special damages, reasonable attorney fees and any other remedy available under the Unruh Act. Calif. Civil Code § 52(a).

**COUNT FIVE**

**Denial of Rights under the United States Constitution, Eighth Amendment**

89. In the alternative, the defendants Duffy and Allen – in their individual capacity and acting under color of law – violated plaintiff's right to be free of cruel and unusual punishment, guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

90. The Eighth Amendment prohibits "cruel and unusual punishments." U.S. CONST. amend. VIII.

91. The Supreme Court holds that "[d]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

92. In the Ninth Circuit, the test for deliberate indifference consists of two parts. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). First, plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Id*. Plaintiff has a serious medical need when he has "a medical condition that significantly affects an individual's daily activities." *McGuckin v. Smith*, 974 F.2d 1050, 1059-1060 (9th Cir.1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997).

93. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Penner*, 439 F.3d at 1096. A prison official is deliberately indifferent if the official "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir.2002)). The prison official need not have intended any harm to befall the inmate; "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Lemire v. California Dept. of Corrections and Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

94. Here, Duffy and Allen are sued in their individual capacities.

95. Barker has a serious medical need because he has a medical condition that significantly affects his daily activities, *i.e.* he has severe degenerative arthritis of the right hip and is confined to a wheelchair.

96. Duffy and Allen's failure to provide Barker with a housing unit with grab bars in the showers obviously could, and actually did, result in further significant injury and the unnecessary and wonton infliction of pain.

97. Further, Duffy was deliberately indifferent to Barker's serious medical needs. Barker's central file at CMF indicates that he has difficulty standing and walking and relies on a wheelchair to move about the facility. Despite this knowledge, and his numerous previous encounters with Barker, Duffy housed Barker in a housing unit that lacked accessible showers.

98. The actions of Duffy demonstrate his disregard for an excessive risk to Barker's health and safety. As a direct and proximate result of this indifference, Barker fell and suffered unnecessary and wanton infliction of physical injury, pain and emotional distress.

99. Duffy acted outside the scope of his jurisdiction and without authorization of law, willfully and knowingly, to deprive Barker of his right to freedom from cruel and unusual punishment and from state-occasioned harm, injury, and damage to bodily integrity.

100. Finally, Allen was deliberately indifferent to Barker's serious medical needs. Barker's central file at CMF indicates that he has difficulty standing and walking and relies on a wheelchair to move about the facility. Moreover, this information, contained in a functional capacity chrono renewal, was known to Allen, as she was provided with a copy of this chrono renewal. Despite this knowledge, Allen housed Barker in a housing unit that lacked accessible showers.

101. The actions of Allen demonstrate her disregard for an excessive risk to Barker's health and safety. As a direct and proximate result of this indifference, Barker fell and suffered unnecessary and wanton infliction of physical injury, pain and emotional distress.

102. Allen acted outside the scope of her jurisdiction and without authorization of law, willfully and knowingly, to deprive Barker of his right to freedom from cruel and unusual punishment and from state-occasioned harm, injury, and damage to bodily integrity.

103. In acting as is alleged in this complaint, defendants Duffy and Allen acted knowingly, willfully, and maliciously, and with reckless and callous disregard for plaintiff's federally protected rights.

104. Barker seeks general damages. He also seeks reasonable compensation for his legal costs, attorney's fees, and expert fees. 42 U.S.C. §§ 1988(b), (c).

## PRAYER FOR RELIEF

WHEREFORE, Barker prays judgment against the defendants for:

1. Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.
2. General and special damages.
3. Attorneys' fees, litigation expenses, and costs of suit.
4. Interest at the legal rate from the date of the filing of this action.
5. Such other and further relief as the court may deem proper.

Dated: December 1, 2014 DISABLED ADVOCACY GROUP, APLC

*/s/ Scottlynn J Hubbard IV*
SCOTTLYNN J HUBBARD IV
Attorney for Plaintiff Barker